UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EUGENE LIONEL WALKER,<br>　　　Plaintiff, | :<br>:<br>: | PRISONER CASE NO.<br>3:17–cv–425 (JCH) |
| v. | :<br>: | |
| JANE DOE #1 et al.,<br>　　　Defendants. | :<br>: | APRIL 14, 2017 |

**INITIAL REVIEW ORDER**

**I.　INTRODUCTION**

Plaintiff Eugene Lionel Walker ("Walker"), currently incarcerated at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, has filed a Complaint (Doc. No. 1) pro se under section 1983 of title 42 of the United States Code. The Complaint was filed on March 15, 2017, and his Motion to Proceed in Forma Pauperis (Doc. No. 7) was granted on April 5, 2017, see generally Order (Doc. No. 8). The named defendants are Drs. Carson Wright ("Wright") and Ricardo Ruiz ("Ruiz"), Jane Does #1–4 and #6–9, and John or Jane Doe #5. Walker alleges that the defendants were deliberately indifferent to his serious medical needs. See Compl. at 11 ¶ 1.[1] Each defendant is named in individual capacity only. Id. at 1.

Under section 1915A of title 28 of the United States Code, the court must review civil complaints filed by prisoners and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.

---

[1] Because each of the pages of the Complaint, other than the last, are unnumbered, citations in this Order refer to the PDF pagination.

§ 1915A(a)–(b).  In evaluating a pro se complaint, pursuant to section 1915A of title 28, the court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[ ]."  Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief "above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special solicitude for pro se litigants).

## II.  FACTS[2]

On February 8, 2014, Walker was housed at Northern Correctional Institution ("Northern") as a pretrial detainee.  See Compl. at 5 ¶ 1.  He informed nurse Doe #1,—while she was doing her rounds—that he was unable to move from his bunk because of severe back pain.  See id. at 5 ¶ 2.  Walker also reported that the right side of his nose was clogged and he experienced pain behind his right eye.  See id.  He asked to see a doctor.  See id.  Doe #1 told Walker that the doctor was at Northern only on certain

---

[2] As noted above, for the purposes of issuing this order, the court accepts the factual allegations in the Complaint as true.  That being the case, this description of the facts is derived from Walker's Complaint.

days, but said that she would call the doctor and explain his symptoms. See id. at 5 ¶ 2. Doe #1 did so and told Walker that Dr. Wright had prescribed Motrin and Flexerol for ten days. See id. at 5 ¶ 3.

On February 11, 2014, Walker explained to Wright that the medication was helping his back, but he still could not breathe through the right side of his nose, had a heavy, painful feeling in his eyes, and now also experienced a "bad tasting fluid going down the back of [his] throat." Id. at 6 ¶ 6. Wright told Walker to continue taking the Motrin and Flexerol for the prescribed period. See id. On February 19, 2014, Walker submitted a written request to see the doctor, because the painful pressure behind his right eye was worsening, and he was having difficulty opening his eye. The other symptoms persisted. See id. at 6 ¶ 5. Nurse Doe #2 saw Walker on February 21, 2014. See id. ¶ 6. After speaking with Wright, Doe #2 told Walker that his Motrin prescription had been renewed for three months. See id. at 6 ¶ 7.

On March 2, 2014, Nurse Doe #3 saw Walker for complaints of a swollen and painful right eye and an inability to sleep due to headaches and pain. Doe #3 diagnosed Walker as having a sty in his eye and recommended warm compresses and Motrin. See id. at 7 ¶ 8. By March 5, 2014, Walker was experiencing drainage from his eye, inability to open his eye, recurring headaches, a clogged nose, a heavy feeling in his face, and an inability to sleep. Doe #2 questioned the diagnosis of a sty, but recommended that Walker continue the compresses and Motrin. Doe #2 spoke with Wright, who prescribed erythomycin ointment for Walker's eye. See id. at 7 ¶ 9.

Over the next two weeks, Walker's symptoms worsened. His cellmate reported to the lieutenant that Walker was stumbling and displaying unusual behavior. See id.

at 7 ¶ 10.  Prison officials called medical staff, and Walker was taken by ambulance to the University of Connecticut Health Center for evaluation.  See id. at 8 ¶ 11.  On March 19, 2014, Walker underwent emergency surgery for an intracranial cerebral abscess.  See id. at 8 ¶ 12.  Doctors told Walker that his condition was life-threatening and was caused by an untreated sinus infection.  See id. at 8 ¶¶ 13–14.

On August 9, 2016, Walker was a sentenced prisoner confined at Cheshire Correctional Institution ("Cheshire").  He submitted a request to see Ruiz for complaints of a severe headache and "funny feeling" in his face.  See id. at 8 ¶ 15.  He received no response.  A few days later, Walker began having multiple seizures.  He went into a coma, after being rushed to the hospital.  See id. at 8 ¶ 16.

On the morning of February 23, 2017, Nurse Doe #5 did not give Walker his anti-seizure medication.  See id. at 9 ¶ 17.  During morning recreation, Walker asked Correctional Officer Reid ("Reid") to contact the medical unit and tell them that he had not received his medication.  The medical unit stated that the log indicated that Walker had received his medication.  See id. at 9 ¶ 18.

After morning recreation, Walker spoke to Deputy Warden Doe #6 while she was touring the unit.  He explained the situation and asked her to review surveillance footage to see that the medical unit had falsified their report.  Doe #6 refused to review the footage, but said that she would look into the matter.  Doe #6 never reported the result of her investigation.  See id. at 9 ¶ 19.

Walker began feeling dizzy and asked for his PRN medication; Reid called the medical unit.  Walker told Reid that he was not going to lock up in his cell because the

4

medical staff said he could wait for the medication. See id. at 9 ¶ 20. The unit manager contacted the medical unit and was told to send Walker to the unit. See id. at 10 ¶ 21.

Around noon, Walker saw Ruiz and explained that he had not received his morning medication. Nurse Doe #7 told Ruiz that Walker had received his medication and was lying. Walker asked Ruiz to have someone check the surveillance footage. Ruiz asked Nurse Doe #8 to do so. See id. at 10 ¶ 22.

Shortly thereafter, Doe #7 gave Walker his PRN medication and told him to return to the housing unit. See id. at 10 ¶ 23. That same day, Walker wrote to the nursing supervisor, Doe #9, and submitted a grievance. He also requested that Deputy Warden Viger preserve the surveillance footage. See id. at 10 ¶ 24. The next day, on February 24, 2014, Walker was transferred to Corrigan-Radgowski Correctional Center. See id. at 10 ¶ 25.

During the three years since his emergency surgery, Walker has experienced several hospital stays, including time in the intensive care unit, several weeks in the prison infirmary, seizures, a coma, and countless doctor's appointments and medical procedures, in addition to retaliatory treatment by medical staff. See id. at 11 ¶ 26. He has a prominent scar several inches long from his hairline into his forehead. See id. at 11 ¶ 27. He experiences constant headaches and must take seizure medication which also causes headaches. He needs continuing medical care. See id. at 11 ¶ 28.

## III.   DISCUSSION

Walker alleges that all defendants were deliberately indifferent to his serious medical needs. See id. at 11 ¶ 1. He also asserts state law claims for negligence and medical malpractice. See id. at 12 ¶¶ 2–5. Walker alleges that his right to equal

5

protection was violated because sentenced inmates are housed in correctional facilities staffed by doctors every day, while he was housed in a facility with a doctor only on some days. See id. at 13 ¶¶ 9, 11. Walker asserts a second claim, against Ruiz and Does ##6–9, for retaliation, claiming that he was transferred because he filed grievances concerning the denial of his morning medication. See id. at 14 ¶ 1. Walker seeks damages, declaratory relief, and an injunction ordering the defendants to provide appropriate medical treatment, refrain from retaliating against him, and transfer him back to Cheshire. See id. at 15.

    A.    Deliberate Indifference to Serious Medical Needs

Walker describes two examples of deliberate indifference to serious medical needs, one while he was a pretrial detainee and one as a sentenced inmate. Rights of pretrial detainees are considered under the Fourteenth Amendment while rights of sentenced prisoners are considered under the Eighth Amendment. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).

To state a claim for deliberate indifference to a serious medical need, Walker must show both that his medical need was serious and that the defendants acted with the requisite state of mind. See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). There are both objective and subjective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991). The condition must be one "of urgency, [ ] that may produce death, degeneration, or

extreme pain." See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  This standard applies under both the Eighth and Fourteenth Amendments.

The subjective component for Eighth Amendment claims requires that the defendants be actually aware of a substantial risk that the inmate would suffer serious harm as a result of their actions or inactions.  See Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).  Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. See id.  Nor does a difference of opinion regarding what constitutes an appropriate response to and treatment for inmate symptoms constitute deliberate indifference.  See Ventura v. Sinha, 379 F. App'x 1, 2–3 (2d Cir. 2010) (summary order); Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).  While a disagreement over treatment is not cognizable under section 1983, the treatment actually given must be adequate.  See Chance, 143 F.3d at 703.

The subjective standard for Fourteenth Amendment deliberate indifference claims differs.  The Supreme Court, in Kingsley v. Hendrickson, — U.S. —, 135 S. Ct. 2466 (2015), held that a pretrial detainee asserting an excessive use of force claim under the Fourteenth Amendment need only show "that the force purposely or knowingly used against him was objectively reasonable." Id. at 2473.  The decision in Kingsley expressly dealt with an excessive use of force claim.  The Second Circuit has since applied Kinglsey to claims of unconstitutional conditions of confinement by pretrial detainees and implied that Kingsley should be applied to all deliberate indifference claims raised pretrial detainees.  See Darnell, 849 F.3d at 35 ("A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether through the use of

7

excessive force, by deliberate indifference to conditions of confinement, or otherwise."). The Second Circuit determined that "the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm. Id. Thus, the court defines what the Second Circuit has styled the "mens rea prong" or "mental element prong," see id. at 32, objectively, see id. at 35.

Accordingly, for a deliberate indifference to medical needs claim, a pretrial detainee can satisfy the "mens rea" element of the standard by showing that the defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the [defendants] knew, or should have known, that the condition posed an excessive risk to health or safety." Id. Negligence that would support a claim for medical malpractice still does not rise to the level of deliberate indifference and is not cognizable under section 1983. See Kingsley, 135 S. Ct. at 2472 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

Walker's deliberate indifference claim against Wright and Does ##1–3 arose when he was a pretrial detainee. Thus, his allegations need only meet the objective standard. Walker alleges that an untreated sinus infection resulted in emergency surgery for an intracranial cerebral abscess. The incident spanned a period of about six weeks. The allegations are serious enough to satisfy the objective component of the test. In addition, the allegations that defendants treated only some of his symptoms and did not investigate a cause of all of the symptoms is sufficient to meet the mens rea

portion of the test.  Wright and Does ## 1–3 should have known that failure to address all of Walker's symptoms could pose an excessive risk to his health.  Accordingly, Walker states a plausible deliberate indifference claim regarding the incident at Northern.

The second deliberate indifference claim occurred while Walker was a sentenced prisoner.  Other courts in this Circuit have concluded that seizures are a serious medical condition.  See, e.g., Harrington v. Vadlamudi, No. 9:13–CV–0795 (BKS/DJS), 2016 WL 4570441, at *7 (N.D.N.Y. Aug. 9, 2016) ("A seizure condition is a serious medical condition . . . .).  Walker alleges that defendants Ruiz and Does ## 5–9 ignored his claims that he did not receive his medication.  At this stage of litigation, the allegations are also sufficient to satisfy the subjective element, namely that the defendants understood that failure to act posed a substantial threat to Walker's health.

The deliberate indifference claims will proceed as to defendants Wright, Ruiz, and Does ## 1–3 and 5–9.  Nurse Doe #4 is identified as working at Cheshire but is not referenced in the factual statement.  As Walker alleges no facts relating to any claim against her, the claims against Doe #4 are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

    B.    Retaliation

Walker alleges that on February 23, 2017, he wrote to the nursing supervisor, Doe #9, filed a grievance, and wrote to Deputy Warden Viger requesting preservation of surveillance footage.  See Compl. at 10 ¶ 24.  The following day, he was transferred to Corrigan-Radgowski Correctional Center.  Id. at 10 ¶ 25.  Walker contends that his

transfer was in retaliation for the complaint and grievance. He brings this claim against defendants Ruiz and Does ##6–9. See id. at 14 ¶ 1.

Prison officials may not retaliate against inmates for exercising their constitutional rights. See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). To state a claim for retaliation, Walker must allege facts demonstrating: (1) that he was engaged in constitutionally protected activity, (2) that the defendants took adverse action against him, and (3) that there is a causal connection between the protected activity and the adverse action. Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003). To satisfy the third element, Walker must allege that the protected activity "was a substantial or motivating factor for the adverse actions taken" against him. Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (citation omitted). Walker alleges that he was transferred immediately after he filed his complaints and grievance. The temporal proximity between Walker's complaints and his transfer constitutes circumstantial evidence of retaliation. See Faulk v. Fisher, 545 F. App'x 56, 58 (2d Cir. 2013) (summary order) (noting that temporal proximity is circumstantial evidence of retaliation, but requiring further evidence of retaliation to survive summary judgment). As Walker's allegations are sufficient to state a plausible claim of retaliation, that claim will proceed as well.

C. Negligence and Medical Malpractice

Finally, Walker asserts state law claims for negligence and medical malpractice. State employees are immune from suits for negligence under state law. See Conn. Gen. Stat. § 4-165(a) ("No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."). All of the defendants are

state employees, acting within the scope of their employment. Thus, as they are immune from suit for negligence, all negligence claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(2). See Richardson v. Blanchette, No. 3:03–CV–1621 (AWT), 2006 WL 496010, at *12 (D. Conn. Mar. 1, 2006) (dismissing state law negligence claims).

Connecticut law requires that, to bring a claim for medical malpractice against medical professionals, Walker must file with his complaint an opinion letter from a qualified medical professional certifying that there appears to have been medical negligence in the care or treatment of the plaintiff. Telkamp v. Vitas Healthcare Corp. Atlantic, No. 3:15–CV–726 (JCH), 2016 WL 777906, at *8 (D. Conn. Feb. 29, 2016) (quoting Conn. Gen. Stat. § 52-190a(a)). This requirement applies whenever the defendants are sued in their capacities as medical professionals, the alleged actions were medical in nature and arose from the relationship between a medical professional and patient, and the alleged actions were related to medical diagnosis and treatment and involved the exercise of medical judgment. Id. (quoting Jarmie v. Troncale, 306 Conn. 578, 588 (2012)). Walker's claims involve the treatment, or lack thereof, of his medical conditions. Thus, the requirements of section 52-190a of the Connecticut General Statutes apply. As Walker has not filed with his Complaint any opinion letters from similar health care professionals, his state law malpractice claims are dismissed for failure to comply with the requirements of Conn. Gen. Stat. § 52-190a(a). See Conn. Gen. Stat. § 52-190a(c).

**IV.     CONCLUSION AND ORDERS**

All state law claims for negligence are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2) as barred by Conn. Gen. Stat. § 4-165.  The state law claims for medical malpractice are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to comply with Conn. Gen. Stat. § 52-190a(a).  Walker may move to set aside the dismissal of his medical malpractice claim if he can submit the required opinion letter.

In accordance with the foregoing analysis, the court enters the following Orders:

(1)     **The Clerk shall** verify the current work addresses of defendants Wright and Ruiz with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at that address within **twenty-one (21) days** from the entry of this Order, and report to the court on the status of those waiver requests on the thirty-fifth (35) day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity, and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** send written notice to the plaintiff of the status of this action, along with a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent.  If

they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If Walker changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that **he must notify the court**. Failure to do so can result in the dismissal of the case. Walker must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Walker has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Walker should also notify the defendants or the attorney for the defendants of his new address.

(9)     Walker shall utilize the Prisoner Efiling Program when filing documents in this case.

(10)    The court cannot effect service on Does ## 1–3 and 5–9 without their full names and current work addresses.  Walker is directed to obtain this information from defendants' attorney during discovery and then file an amended complaint containing this information.  The amended complaint shall include the same claims as the original Complaint with the exception that the proper name shall be substituted for each Doe.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 14th day of April, 2017.

    /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge