# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|   |   |   |
|---|---|---|
| | : | |
| EUGENE LIONEL WALKER, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:17-CV-425 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CARSON WRIGHT, et al. | : | MAY 15, 2018 |
| Defendants. | : | |

### RULING ON DEFENDANTS' MOTION TO DISMISS AND/OR MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. NO. 39)

The plaintiff, Eugene Lionel Walker ("Walker"), currently incarcerated at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, has filed an Amended Complaint pro se under section 1983 of title 42 of the United States Code. The defendants are Dr. Carson Wright and Nurses Barbara Savoie, Shannon Lawrence, Wanda Verville, Darnella Burke, and Debra Wilson. The defendants now move to dismiss all claims. See Motion to Dismiss and/or Motion for Judgment on the Pleadings ("Mot. to Dismiss") (Doc. No. 39). They ask the court to consider their Motion as a Motion for Judgment on the Pleadings as to Dr. Wright, the only defendant to have filed an Answer, and a Motion to Dismiss as to all other defendants.

For the reasons that follow, the defendants' Motion is granted in part.

## I.    STANDARD OF REVIEW

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. Id. When reviewing a motion to dismiss, the court must accept the complaint's factual allegations as true and draw all reasonable inferences in the non-movant's favor. Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. Ashcroft, 556 U.S. at 678.

The standard for granting a motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion to dismiss. Willey v. Kirkpatrick, 801 F.3d 51, 61–62 (2d Cir. 2015) (noting that court employs same standard on motions for judgment on the pleadings under Rule 12(c) and motions to dismiss under Rule 12(b)(6), namely whether "the complaint contains sufficient factual matter that, if accepted as true, states a plausible claim for relief.").

## II.    FACTS

On February 8, 2014, Walker was housed at Northern Correctional Institution ("Northern") as a pretrial detainee. He informed Nurse Savoie, while she was doing rounds, that he was unable to move from his bunk because of severe back pain. Walker also reported that the right side of his nose was clogged, and he was experiencing pain behind his right eye. He asked to see a doctor. See Amended Complaint ("Am. Compl.") (Doc. No. 29) at ¶ 1. Savoie told Walker that the doctor was

at Northern only on certain days, but said that she would call the doctor and explain his symptoms.  See id. at ¶ 2.  Nurse Savoie did so and told Walker that Dr. Wright had prescribed Motrin and Flexeril for ten days.  See id. at ¶ 3.

On February 11, 2014, Walker explained to Dr. Wright that the medication was helping his back, but he still could not breathe through the right side of his nose and had a heavy, painful feeling in his eyes and, now, also experienced a bad tasting fluid going down the back of his throat.  Dr. Wright told him to continue taking the Motion and Flexeril for the prescribed period.  See id. at ¶ 4.  On February 19, 2014, Walker submitted a written request to see the doctor because the painful pressure behind his right eye was worsening, and he was having difficulty opening his eye.  The other symptoms had not changed.  See id. at ¶ 5.  Nurse Lawrence saw Walker on February 21, 2014. See id. at ¶ 6.  After speaking with Dr. Wright, Nurse Lawrence told Walker that his Motrin prescription had been renewed for three months.  See id. at ¶ 7.

On March 2, 2014, Nurse Verville saw Walker for complaints of a swollen and painful right eye and inability to sleep due to headaches and pain.  Nurse Verville diagnosed a stye in his eye and recommended warm compresses and Motrin.  See id. at ¶ 8.  By March 5, 2014, Walker was experiencing drainage from his eye, an inability to open his eye, recurring headaches, a clogged nose, a heavy feeling in his face, and an inability to sleep.  Nurse Lawrence questioned the diagnosis of a stye, but recommended that Walker continue the compresses and Motrin.  Nurse Lawrence spoke with Dr. Wright who prescribed erythromycin ointment for Walker's eye.  See id. at ¶ 9.

3

Over the next two weeks, Walker's symptoms worsened. His cellmate reported to custodial staff that Walker was stumbling and displaying unusual behavior. See id. at ¶ 10. Walker was taken by ambulance to the University of Connecticut Health Center for evaluation. See id. at ¶ 11. On March 19, 2014, Walker underwent emergency surgery for an intracranial cerebral abscess. See id. at ¶ 12. Doctors told Walker that his condition had been life-threatening and was caused by an untreated sinus infection. See id. at ¶¶ 13–14.

On August 9, 2016, Walker was a sentenced prisoner confined at Cheshire Correctional Institution ("Cheshire"). He submitted a request to see Dr. Ruiz for complaints of a severe headache and "funny feeling" in his face. See id. at ¶ 15. He received no response. A few days later, Walker experienced multiple seizures. He went into a coma after being rushed to the hospital. See id. at ¶ 16.

On the morning of February 23, 2017, Nurse Burke did not give Walker his anti-seizure medication. See id. at ¶ 17. During morning recreation, Walker asked Correctional Officer Reid ("Reid") to contact the medical unit and tell them that he had not received his medication. The medical unit stated that the log indicated that Walker had received his medication. See id. at ¶ 18.

Walker began feeling dizzy and asked for his "PRN."[1] Reid called the medical unit. Walker told Reid that he was not going to lock up in his cell because the medical

---

[1] It is not clear to the court from the Amended Complaint what "PRN" stands for. See Am. Compl. at ¶ 19 (using, without defining, the term "PRN"). Based on context, the court assumes the plaintiff is referring to his medication.

staff said he could wait for the medication.  See id. at ¶ 19.  The unit manager contacted the medical unit and was told to send Walker to the unit.  See id. at ¶ 20.

Around noon, Walker saw Dr. Ruiz and explained that he had not received his morning medication.  Nurse Wilson told Dr. Ruiz that Walker had received his medication and was lying.  Walker asked Dr. Ruiz to have someone check the surveillance footage.  Dr. Ruiz asked Nurse Wilson to do so.  See id. at ¶ 21.

Shortly thereafter, Nurse Wilson gave Walker his PRN medication and told him to return to the housing unit even though Dr. Ruiz had told Walker to wait so they could "figure out the problem."  Id. at ¶ 22.  That same day, Walker wrote to the nursing supervisor and submitted a grievance.  He also requested that Deputy Warden Viger preserve the surveillance footage.  See id. at ¶ 23.  On February 24, 2014, Walker was transferred to Corrigan-Radgowski Correctional Center.  See id. at ¶ 24.

During the three years since his emergency surgery, Walker has experienced several hospital stays, including time in the intensive care unit, several weeks in the prison infirmary, seizures, a coma, and countless doctor's appointments and medical procedures as well as retaliatory treatment by medical staff.  See id. at ¶ 25.  He has a prominent scar several inches long from his hairline into his forehead.  See id. at ¶ 26.  He experiences constant headaches and must take seizure medication, which also causes headaches.  He needs continuing medical care and is left with some permanent impairment as a result of the untreated sinus infection.  See id. at ¶ 27.

## III.    DISCUSSION

First, Walker alleges that all defendants were deliberately indifferent to his

serious medical needs in violation of his rights under the Eighth and Sixth Amendments. See id. at 10–11. Second, he reasserts state law claims for negligence and medical malpractice. See id. at 11. These claims were dismissed in the Initial Review Order and are not revived by inclusion in the Amended Complaint.[2] See Initial Review Order (Doc. No. 9) at 10–11. Third, Walker alleges that his right to equal protection was violated because sentenced inmates are housed in correctional facilities staffed by doctors every day, while he, as a pretrial detainee, was housed in a facility with a doctor only on some days.[3] See Am. Compl. at 12.

The defendants Move to Dismiss the Amended Complaint on the ground that Walker fails to state a cognizable claim against any defendant and the defendants are protected by qualified immunity. The defendants direct their arguments only to Walker's claim of deliberate indifference to serious medical needs and do not address his equal protection claim.

A.     Deliberate Indifference to Serious Medical Needs

Walker alleges two instances of deliberate indifference to serious medical needs, one while he was a pretrial detainee at Northern Correctional Institution and one as a sentenced inmate at Cheshire Correctional Institution. Rights of pretrial detainees are

---

[2] The Initial Review Order permitted Walker to move to set aside the dismissal of the medical malpractice claim if he submitted the required medical opinion letter. See Initial Review Order at 12. However, Walker has neither submitted an opinion letter nor moved to set aside the dismissal. Therefore, the medical malpractice claim has not been revived.

[3] Walker dismissed all claims for retaliation against any of the defendants and all claims against Dr. Ruiz. See Response to Defendant Ruiz's Motion to Dismiss (Doc. No. 24); Motion to Dismiss (Doc. No. 28). These claims are not included in the Amended Complaint.

considered under the Fourteenth Amendment, while rights of sentenced prisoners are considered under the Eighth Amendment.  See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).  Walker also references a Sixth Amendment right to medical care.  The Sixth Amendment guarantees the right to counsel and other protections for trials that may result in the deprivation of liberty.  U.S. Const. amend. VI.  There are no reported cases finding a right to medical care under the Sixth Amendment.  The court will therefore address Walker's right to medical care as a pretrial detainee under the Fourteenth Amendment.  The Eighth Amendment applies to his post-conviction claims.  Any alleged claims under the Sixth Amendment are dismissed.

                   1.          Eighth Amendment Standard

The Supreme Court has held that deliberate indifference to a convicted prisoner's serious medical needs can constitute cruel and unusual punishment in violation of the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A claim of deliberate indifference to serious medical needs contains both an objective and a subjective component.  See Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

First, as to the objective prong of the test, the alleged deprivation of medical care must be "sufficiently serious."  See id. at 279 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  Id.  A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain.  See Brock v. Wright, 315 F.3d 158, 162–63 (2d Cir. 2003); Hathaway v.

Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  A medical condition may not initially be

serious, but may become serious because it is degenerative and, if left untreated or

neglected for a long period of time, will "result in further significant injury or the

unnecessary and wanton infliction of pain."  Harrison v. Barkley, 219 F.3d 132, 136–37

(2d Cir. 2000).  The Second Circuit has identified several factors that are "highly

relevant" to the question of whether a medical condition is sufficiently serious, including

"an injury that a reasonable doctor or patient would find important and worthy of

comment or treatment; the presence of a medical condition that significantly affects an

individual's daily activities; or the existence of chronic and substantial pain."  Chance v.

Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

Second, as to the subjective prong, the defendant prison official must have

"act[ed] with a sufficiently culpable state of mind."  Id. (quoting Hathaway, 99 F.3d at

66).  This does not require "knowing and purposeful infliction of harm," but "suffices if

the plaintiff proves that the official acted with deliberate indifference to inmate health."

See Salahuddin, 467 F.3d at 279–80.  Thus, the defendant must have been "actually

aware of a substantial risk that serious inmate harm would result" as a result of his or

her actions or inactions and have disregarded that risk.  See id.  The fact that a prison

official or employee "failed to alleviate a significant risk that he should have perceived,

but did not" does not constitute deliberate indifference.  See Farmer, 511 U.S. at 838.

Furthermore, a showing of negligence or medical malpractice does not support

an Eighth Amendment claim, unless it involves culpable recklessness.  See Hernandez

v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).  Thus, "not every lapse in prison medical

8

care will rise to the level of a constitutional violation." See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). In certain situations, however, "instances of medical malpractice may rise to the level of deliberate indifference[,] namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." Hathaway, 99 F.3d at 553 (internal quotation marks and citation omitted).

2. Fourteenth Amendment Standard

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment." Darnell, 849 F.3d at 29. A pretrial detainee's rights are "at least as great as the Eighth Amendment protections available to a convicted prisoner." Id. (citation omitted). Previously, the analysis of the two prongs for deliberate indifference were the same, irrespective of whether they were brought under the Eighth Amendment or the Fourteenth Amendment. See Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009), overruled by Darnell, 849 F.3d at 35. However, the Second Circuit in Darnell, relying on the Supreme Court's opinion in Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015), changed the analysis under the second prong. See Darnell, 849 F.3d at 32–36.

The Second Circuit held that the second prong is more appropriately considered the "mens rea" prong rather than the subjective prong. See id. at 29, 35. In contrast to the Eighth Amendment, this prong is defined objectively under the Fourteenth Amendment. See id. To satisfy the "mens rea" prong, "the pretrial detainee must prove

9

that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, <u>or should have known</u>, that the condition posed an excessive risk to health or safety." <u>Id.</u> (emphasis added).

While the Second Circuit's holding in <u>Darnell</u> was applied to a claim of deliberate indifference to unconstitutional conditions of confinement, a footnote in <u>Darnell</u> indicates that "deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment." <u>See id.</u> at 33 n.9. District courts in this Circuit have therefore applied <u>Darnell</u>'s objective "<u>mens rea</u>" prong to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment. <u>See</u> <u>Lloyd v. City of New York</u>, 246 F. Supp. 3d 704, 718–19 (S.D.N.Y. 2017); <u>Feliciano v. Anderson</u>, No. 15-CV-4106 (LTS) (JLC), 2017 WL 1189747, at *10 (S.D.N.Y. Mar. 30, 2017); <u>McKinney v. New Haven Police Dep't</u>, No. 3:17-CV-1663 (JCH), 2017 WL 5137583, at *4 (D. Conn. Nov. 6, 2017); <u>Gonzalez-Torres v. Newson</u>, No. 3:17-CV-00045 (SRU), 2017 WL 2369369, at *3 (D. Conn. May 31, 2017).

3.      Incident at Northern Correctional Institution

The incident at Northern Correctional Institution occurred while Walker was a pretrial detainee. <u>See</u> Am. Compl. at ¶ 1. Therefore, the Fourteenth Amendment standard applies. <u>See</u> <u>Darnell</u>, 849 F.3d at 29. The incident covered a period of six weeks during which time, defendants Dr. Wright, Nurse Savoie, Nurse Lawrence, and Nurse Verville provided treatment.

The defendants do not address the first prong of the deliberate indifference

standard.  <u>See</u> Mem. in Supp. at 10–12.  Thus, for purposes of this Ruling, the court assumes that Walker's undiagnosed sinus infection and resulting intracranial cerebral abscess are serious medical needs, satisfying the first prong of the Fourteenth Amendment analysis.  The court, therefore, need only determine whether the allegations show that each defendant knew or should have known that these conditions posed an excessive risk to Walker's health.

The defendants contend Walker's claim against Dr. Wright is merely for misdiagnosis of a sinus infection, arguing that the more serious symptoms did not present until after Dr. Wright last saw Walker.  <u>See</u> Mem. in Supp. at 11–12.  They argue that "a claim of misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, is not cognizable under Section 1983."  Mem. in Supp. at 11 (quoting <u>Torres v. Trombly</u>, 421 F. Supp. 2d 527, 531 (D. Conn. 2006)).[4] However, determining whether the medical provider's conduct was merely misdiagnosis or rose to the level of deliberate indifference "may be difficult in the context of a motion to dismiss—a stage at which the court does not have the benefit of expert opinion."  <u>See</u> <u>Davis v. McCready</u>, 283 F. Supp. 3d 108, 122 (S.D.N.Y. 2017).

The allegations show that Walker's symptoms were relayed to Dr. Wright three times by nurses and once by Walker himself.  <u>See</u> Am. Compl. at ¶¶ 3, 4, 7, 9.  His symptoms included back pain, clogged nose, eye pain and swelling, difficulty breathing,

---

[4] The court notes that <u>Torres</u> is an Eighth Amendment case, decided prior to the Second Circuit's distinction between the Eighth Amendment and Fourteenth Amendment standards in <u>Darnell</u>.  <u>See</u> <u>Torres</u>, 421 F. Supp. 2d at 531.

fluid in the throat, headaches, difficulty sleeping, and "a weird, heavy feeling in [his] face." See id. Although the symptoms increased in severity each time, Dr. Wright prescribed only Motrin and Flexeril after the first three reports and an ointment to address only one of the symptoms after the fourth report. See id. Drawing all inferences in favor of the plaintiff, the court could infer that Dr. Wright did not merely misdiagnose Walker's condition, but rather ignored his escalating symptoms. For instance, despite the fact that Walker's symptoms were worsening rather than improving, he maintained the same prescription after the first three reports. The allegations are sufficient to support a claim that Dr. Wright should have known that the symptoms required treatment and without treatment could pose an excessive risk to Walker's health. Rather than a disagreement over diagnosis or treatment, the allegations support a plausible claim against Dr. Wright for denial of treatment for Walker's serious medical need.

The defendants also claim that Dr. Wright could not have been deliberately indifferent because he treated Walker's back issues. They provide no authority supporting this contention. At least one case indicates that treating one condition does not necessarily preclude liability for deliberate indifference as to another condition. See Pizarro v. Gomprecht, No.10 CV 4803(KAM)(LB), 2013 WL 990998, at *13 (E.D.N.Y. Feb. 13, 2013) (finding no deliberate indifference where doctor prioritized medical needs and inmate did not report problem, but noting "[t]his not to say that because a doctor treats one condition, they cannot be deliberately indifferent to another").

Given the alleged severity and worsening of Walker's symptoms, the court

12

concludes that it is plausible that a reasonable physician in Dr. Wright's position would have known that prescribing merely Motrin, Flexeril, and eye ointment posed an excessive risk to Walker's health and safety. Therefore, Walker has stated a plausible claim for relief, and the defendants' Motion is denied as to the claim against Dr. Wright. See Davis, 283 F. Supp. 3d at 123.

Three nurses, Nurse Savoie, Nurse Lawrence, and Nurse Verville, are also referenced in this deliberate indifference claim. Nurse Savoie saw Walker one time. See Am. Compl. at ¶¶ 1–3. As Dr. Wright was not in the facility on that day, she relayed the plaintiff's symptoms and complaints to Dr. Wright and followed his instructions. See id. Nurse Lawrence saw Walker twice. See id. at ¶¶ 6–7, 9. Each time, she relayed his symptoms and complaints to Dr. Wright, told Walker what Dr. Wright said, and followed his instructions. See id. The defendants contend that the nurses acted appropriately in relaying information to Wright and following his instructions. See Mem. in Supp. at 10.

Walker does not allege that either nurse inaccurately described his symptoms or did not follow Dr. Wright's instructions. Rather, Walker's allegations suggest that Nurses Savoie and Lawrence acted appropriately. Thus, the allegations against them do not state a plausible deliberate indifference claim. See Solek v. Naqvi, No. 3:16-cv-947(JAM), 2016 WL 7007475, at *4 (D. Conn. Nov. 28, 2016) ("Although plaintiff alleges that defendant Doe failed to treat his eye injury, he also alleges that she determined the eye injury was sufficiently serious to warrant examination by Dr. Naqvi. Summoning the on-call doctor to treat a potentially serious injury does not constitute deliberate

13

indifference to a serious medical need.").[5]  The defendants' Motion to Dismiss is granted as to the claims against Nurses Savoie and Lawrence.

Finally, Nurse Verville saw Walker once, after he had been seen by Dr. Wright, Nurse Savoie, and Nurse Lawrence.  See Am. Compl. at ¶ 8.  He complained of a swollen and painful right eye, headaches, and difficulty sleeping as a result of the pain. See id.  She suggested that he might have a stye and recommended warm compresses, in addition to the Motrin already prescribed by Dr. Wright.  See id.  She did not contact Dr. Wright to obtain instructions regarding Walker's worsening symptoms.

The defendants make a similar argument regarding the claim against Nurse Verville as they do the claim against Dr. Wright.  See Mem. in Supp. at 10–11.  They argue that she examined and treated Walker, and that her misdiagnosis does not rise to the level of deliberate indifference.  See id.  The court reaches the same conclusion here as it did with Dr. Wright.  In light of the length of time Walker had been experiencing the symptoms and the existence of symptoms not related to his eye, the allegations permit the inference that Nurse Verville should have known that the condition could be serious and should therefore have contacted Dr. Wright.  Because the court must draw all inferences in favor of the plaintiff, the court concludes that Walker has stated a plausible claim of deliberate indifference against Nurse Verville. Therefore, the Motion to Dismiss is denied as to the claim against Nurse Verville.

---

[5] The court notes that Solek is an Eighth Amendment case, decided prior to the Second Circuit's distinction between the Eighth Amendment and Fourteenth Amendment standards in Darnell.  See Solek, 2016 WL 7007475, at *4.  However, the court believes the same result would be warranted under Darnell's articulation of the second prong of the Fourteenth Amendment standard.

14

4. Incident at Cheshire Correctional Institution

The second deliberate indifference claim occurred while Walker was a sentenced prisoner at Cheshire Correctional Institution. See Am. Compl. at ¶ 15. Therefore, the Eighth Amendment standard applies to this claim. Walker alleges that Nurse Burke failed to give him his seizure medication on one morning. See id. at ¶ 17. When he complained to Dr. Ruiz about the missing medication, Nurse Wilson stated that Walker had received the medication and accused him of lying. See id. at ¶ 21. After Dr. Ruiz instructed Wilson to check surveillance footage, she gave him the medication and instructed him to return to his cell even though Dr. Ruiz had indicated his intention to have Walker wait and resolve the issue. See id. at ¶ 22.

Under the first prong of the Eighth Amendment analysis, seizures are considered a serious medical need. See, e.g., Harrington v. Vadlamudi, No. 9:13-CV-0795(BKS/DJS), 2016 WL 4570441, at *7 (N.D.N.Y. Aug. 9, 2016) ("A seizure condition is a serious medical condition and a failure to respond to an inmate's complaints regarding the possible onset of a seizure may constitute a sufficiently serious deprivation of medical care."). In this case, Walker's allegations against Nurse Burke and Nurse Wilson amount, not to a denial of treatment, but rather to a delay of treatment from the morning, when he was supposed to receive his medication, to sometime after noon. See Am. Compl. at ¶¶ 17, 21. Where the claim is for a delay in treatment rather than a denial of all treatment, the court must consider the effect of the delay, not the underlying condition alone, when determining whether the alleged deprivation is sufficiently serious to warrant Eighth Amendment protection. Smith v.

Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).  "[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes."  Id.

In Smith, the court considered two delays, of seven and five days, in providing HIV medication.  See id. at 181.  The inmate showed no evidence that his HIV infection or overall health was affected by the delay in medication and complained only of temporary itching, severe headaches, and stress.  See id. at 181–82.  The court concluded that the inmate's medical need was not serious, stating that a serious medical need may be absent where, "although an inmate suffers from an admittedly serious medical condition[,] . . . the alleged lapses in treatment are minor and inconsequential."  Id. at 186–87.

Walker's claim is that he was not given his morning dose of seizure medication until sometime after noon.  See Am. Compl. at ¶¶ 17, 21.  During that time, Walker alleges that he experienced dizziness.  See id. at ¶¶ 19, 22.  He alleges no other symptoms or consequences resulting from the delay in medication.  See id. at 17–22. In some instances, courts considering claims for delay in treatment have held that subjective symptoms, including dizziness, do not rise to the level that would make a delay in medication a serious deprivation.  See, e.g., Hanrahan v. Menon, No. 9:07-CV-610, 2010 WL 6427650, at *8–9 (N.D.N.Y. Dec. 15, 2010) (holding, at a summary judgment stage, that a claim that the plaintiff suffered from "feeling low," sleep

16

problems, and periodic panic attacks involving dizziness, chest pains, and difficulty breathing during a two-month delay in treatment was insufficient to establish a serious deprivation of medical care); Brown v. White, No. 9:08-CV-200 (GLS/ATB), 2010 WL 985184, at *9–*10 (N.D.N.Y. Mar. 15, 2010) (holding, also on summary judgment, that an inmate who suffered chronic lower back pain and occasional headaches and dizziness during a three-month delay in treatment had not raised a genuine issue of fact as to whether he suffered a serious deprivation of medical care).

Given that Walker has alleged no detriment to his health beyond temporary dizziness for part of one day, he has not alleged sufficient facts to state a plausible claim that the delay in treatment constituted a serious deprivation of medical care. Even accepting his allegations as true and drawing all inferences in his favor, the court concludes that he has failed to state a claim for deliberate indifference to a serious medical need. Accordingly, the defendants' Motion to Dismiss is granted as to the claims against Nurses Burke and Wilson.

B.    Qualified Immunity

The defendants next argue that they are protected by qualified immunity. See Mem. in Supp. at 12–14. The court has granted the defendants' Motion as to all defendants, except Dr. Wright and Nurse Verville. Thus, the court will only consider whether these two defendants are protected by qualified immunity. The defendants here are sued for damages and are named in their individual capacities only.[6]

---

[6] In the prayer for relief, Walker includes a request for injunctive relief. See Am. Compl. at ¶ B. However, injunctive relief may be obtained from state officials only in their official capacity. Kuck v. Danaher, 822 F. Supp. 2d 109, 148 (D. Conn. 2011); Marsh v. Kirschner, 31 F. Supp. 2d 79, 80 (D. Conn.

The doctrine of qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 136 S. Ct. 305, 314–15 (2015) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001) (internal quotation marks omitted)). Saucier v. Katz established a two-step sequence for evaluating qualified immunity claims: first, deciding "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and, second, "whether the right at issue was "clearly established at the time of defendant's alleged misconduct." Saucier v. Katz, 533 U.S. 194, 202 (2001). The Supreme Court in Pearson v. Callahan later determined that the sequence in Saucier is not mandatory and that courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

In evaluating whether a right is clearly established, the court must find the contours of the right "'sufficiently definite that any reasonable official in [the defendant's] shoes would have understood that he was violating it,' meaning that 'existing precedent . . . placed the statutory or constitutional question beyond debate.'" City & Cty. of San

---

1998). As all defendants are named in the Amended Complaint only in individual capacities, see Am. Compl. at 1, all requests for injunctive relief are not cognizable and are dismissed.

Francisco, Calif. v. Sheehan, 135 S. Ct. 1765, 1774 (2015) (quoting Ashcroft v. al-Kidd,

563 U.S. 731, 741 (2011)).  Although the Supreme Court does not require a case

directly on point, "'clearly established law' should not be defined 'at a high level of

generality.'"  White v. Pauly, 137 S. Ct. 548, 552 (2017) (citation omitted).  "[T]he clearly

established law must be 'particularized' to the facts of the case."  Id.  "This exacting

standard 'gives government officials breathing room to make reasonable but mistaken

judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate

the law."  Sheehan, 135 S. Ct. at 1774 (quoting al-Kidd, 563 U.S. at 744).

        In raising a qualified immunity defense at the motion to dismiss stage rather than

on summary judgment, the defendants "must accept the more stringent standard

applicable to this procedural route."  See McKenna v. Wright, 386 F.3d 432, 436 (2d Cir.

2004).  "Not only must the facts supporting the defense appear on the face of the

complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where

it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

that would entitle him to relief."  Id. (internal quotation marks and citation omitted).

"Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only

those that support his claim, but also those that defeat the immunity defense."  Id.

        The court therefore accepts as true all allegations in the Amended Complaint and

draws all reasonable inferences based on those facts that would defeat the immunity

defense.  Walker alleges that Dr. Wright prescribed only Motrin, Flexeril, and an eye

ointment for his multiple complaints of difficulty breathing, a heavy painful feeling in his

eye, bad tasting fluid in his throat, pressure behind his eye, severe headaches, heavy

feeling in his face, inability to open his eye, and excessive discharge from his eye.  <u>See</u>

<u>Am. Compl.</u> at ¶ 2–9.  Although Dr. Wright was informed several times over the course

of a month that Walker's symptoms were worsening, despite the prescription for Motrin

and Flexeril, he did not adjust his treatment to respond to Walker's symptoms.  <u>See</u> <u>id.</u>

Additionally, Nurse Verville did not contact Dr. Wright about Walker's symptoms.  <u>See</u>

<u>Am. Compl.</u> at ¶ 8.  Instead, she diagnosed a stye and recommended warm

compresses in addition to Motrin.  <u>See</u> <u>id.</u>  The court has determined above that these

allegations state a plausible claim that Dr. Wright and Nurse Verville should have known

that the symptoms required treatment and, without treatment, could pose an excessive

risk to Walker's health.  These alleged facts permit the reasonable inference that all

reasonable officials would have known that they were violating a clearly established

right.  Therefore, Walker has sufficiently alleged facts that state a claim of violation of

clearly established law.

The defendants' argument to the contrary is conclusory and does not articulate

reasons either that the law is not clearly established or that a reasonable officer would

not know that these actions violated the law.  The defendant's Memorandum merely

states, "In the instant case, there is no basis for even believing that the Defendants

violated any constitutional rights of Plaintiff.  Because none of these alleged actions are

sufficient to impose liability, much less overcome qualified immunity, the Defendants are

entitled to qualified immunity and to have all claims dismissed."  Mem. in Supp. at 14.

These conclusory statements do not identify facts pled in the Amended Complaint that

support the defendant's qualified immunity defense.  Given the reasonable inferences

that can be drawn from Walker's allegations, the defendants have not satisfied the "more stringent standard" required to prevail on qualified immunity in a Motion to Dismiss.  See McKenna, 386 F.3d at 436.

The Motion to Dismiss is denied on grounds of qualified immunity.  However, the court notes that the defendant is entitled to raise the qualified immunity defense again at successive stages of the litigation.  See Behrens v. Pelletier, 516 U.S. 299, 306–07 (1996) ("Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)); Hyman v. Abrams, 630 Fed. App'x 40, 42 (2d Cir. 2015).

## IV.    CONCLUSION

The defendants' Motion to Dismiss and for Judgment on the Pleadings (Doc. No. 39) is **GRANTED** as to the claims against Nurse Savoie, Nurse Lawrence, Nurse Burke, and Nurse Wilson, and **DENIED** as to the claims against Dr. Wright and Nurse Verville. Any claims for injunctive relief are also dismissed.  The case will proceed on the Fourteenth Amendment deliberate indifference claims against Dr. Wright and Nurse Verville.  The case also will proceed on Walker's equal protection claim, which was not addressed in defendants' Motion.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 15th of May, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge